818 F.2d 290
 125 L.R.R.M. (BNA) 2268, 106 Lab.Cas. P 12,375
 Sandra KUSHTO; Darlene V. Hoyt; Kim Owens; Clara F.
Stano; Ruby D. Breon; Nancy Marie Quinet; Thomas Frank
Toth; Gwendolyn A. Geer; Linda Renehan; Lori A. Sweet;
Cornelia M. Nedomatsky; Kathleen Newsome; Danita L.
Tinner; Arleen M. Wells; Anita R. Claus; Stephen
Fitzgibbon; Gregory D. Ryan; Gail P. Wilson; Sherri
Kavalsky; David Kincaid; David Blackburn; John Kriss,
Plaintiffs-Appellants,
v.
BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES; R.I.
Kilroy, Individually and as International President of the
Brotherhood of Railway, Airline and Steamship Clerks,
Freight Handlers, Express and Station Employees; CSX
Corporation, t/a The Chesapeake & Ohio Railway Company,
Baltimore & Ohio Railroad, and affiliated lines; John W.
Snow, Individually and as President and Chief Executive
Officer of Chesapeake and Ohio Railway Company, a subsidiary
of CSX Corporation, Defendants-Appellees.
 No. 86-1643.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 8, 1987.
Decided May 1, 1987.
 
 Harvey A. Epstein (Jeffrey N. Pritzker, Margolis, Pritzker & Epstein, P.A., Towson, Md., on brief), for plaintiffs-appellants.
 John A. Edmond Joseph Guerrieri, Jr., Jeanne M.L. Player, Guerrieri & Sweeney, P.C., (Washington, D.C.,) Jack L.B. Gohn (H. Russell Smouse, Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., Baltimore, Md., on brief), for defendants-appellees.
 Before PHILLIPS and ERVIN, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 ERVIN, Circuit Judge:
 
 
 1
 This dispute pits a number of individual members ("the plaintiffs") of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees ("BRAC") against the Chesapeake & Ohio Railway Company ("the railroad" or "C & O"), their employer, in Count I, and against BRAC ("the union") in Count II. Count I alleges that the railroad breached a contract with the plaintiffs. Count II alleges that the union neglected its duty of fair representation.
 
 I.
 
 2
 The events in question began in the fall of 1983, when the railroad first began to negotiate severance pay agreements with individual employees in different locations throughout the C & O system. The railroad attempted to terminate individual clerks through a voluntary plan by offering them lump sum severance payments of around $20,000 per employee (later raised to over $27,000). The union sought and received a permanent injunction against this effort by the railroad. See BRAC v. C & O, 115 L.R.R.M (BNA) 3635 (N.D.Ohio 1983) [Available on WESTLAW, DCT database]. The United States District Court for the Northern District of Ohio held that unilateral efforts by the railroad to contract with employees outside the collective bargaining process constituted a "major" dispute under the Railway Labor Act, 45 U.S.C. Secs. 151-188 (1982), thus giving that court jurisdiction. The court ordered the railroad to enter into collective bargaining with the union before making further offers of severance pay. Copies of this district court decision were posted everywhere that the railroad had solicited voluntary severances.
 
 
 3
 Negotiations between the union and the railroad ensued. The union insisted that the railroad put a cap on the number of employees who would be terminated under the plan, and further, that the voluntary severance offer be made to employees in order of their seniority. The cap was placed somewhere between 350 and 450 terminations. This negotiated arrangement was reached on October 11, 1985, and notices were immediately posted announcing the revised plan for voluntary severance. During the two-week period in which employees could request voluntary termination, the railroad received about 620 applications. Around 490 employees were terminated according to the plan. The remaining applications were denied because of the cap on terminations negotiated by the union.
 
 
 4
 The plaintiffs in this case are among those who requested termination under the negotiated arrangement, but who were denied the severance offer because of the cap. They brought suit in the United States District Court for the District of Maryland. They claim that they were never informed of the existence of the cap. They further claim that the notice announcing the revised plan for voluntary severance was an offer which they properly accepted, creating a binding contract with the railroad. That is the essence of Count I. In Count II, the plaintiffs claim that the union acted wrongly in negotiating the cap.
 
 
 5
 The United States District Court for the District of Maryland dismissed both counts on defendants' motions for summary judgment. The district court also found that plaintiffs' claim against the railroad under Count I of the complaint was a "minor" dispute under the Railway Labor Act. "Minor" disputes under the Railway Labor Act must be handled administratively before a federal court has jurisdiction to review the dispute. See 45 U.S.C. Sec. 153 First (1982). Most, if not all, of the plaintiffs have raised claims similar to the claim asserted in Count I of this case in grievance proceedings before the National Railway Adjustment Board, which is the proper forum for "minor" disputes.
 
 II.
 
 6
 We agree with the district court below that Count I of the complaint in this case presents a "minor" dispute. However, this is equivalent to a finding that the district court below lacked jurisdiction over Count I. See, e.g., Union Pacific Railroad Co. v. Sheehan, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978); Andrews v. Louisville & Nashville Railroad, 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972); Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 39, 77 S.Ct. 635, 639, 1 L.Ed.2d 622 (1957). The district court should not have proceeded to summary judgment on Count I after finding that Count I presented a minor dispute. The central question pertinent to Count I--whether the plaintiffs and the railroad had a contract--is not relevant to any issues in the case over which the district court had jurisdiction; therefore, the district court should not have reached this question. The district court's view that the notice of October 11 was merely a "request for offers," not itself an offer, is entitled to no weight in later proceedings, because the district court lacked jurisdiction to make such a finding. We reverse that part of the district court decision that deals with the merits of Count I.
 
 
 7
 The dispute over the supposed contracts for severance pay is a "minor" dispute because it relates directly to the collective bargaining agreement between the railroad and the union, which was reached as a result of the permanent injunction entered by the United States District Court for the Northern District of Ohio. The railroad defends against the plaintiffs' contract claims on the ground that the agreement between it and the union limited the number of applications for severance pay that the railroad would accept. This is not a frivolous attempt to bring the handling of the severance-pay applications within the language of the collective bargaining agreement. In circumstances such as these, courts are unanimous in agreeing that the dispute is a "minor" one. E.g., Chicago & Northwestern Transportation Co. v. United Transportation Union, 656 F.2d 274, 277-78 (7th Cir.1981); International Brotherhood of Electrical Workers v. Washington Terminal Co., 473 F.2d 1156, 1173 (D.C.Cir.1972), cert. denied, 411 U.S. 906, 93 S.Ct. 1530, 36 L.Ed.2d 195 (1973); REA Express, Inc. v. Brotherhood of Railway, Airline & Steamship Clerks, 459 F.2d 226, 231 (5th Cir.), cert. denied, 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972); United Transportation Union v. Burlington Northern, Inc., 458 F.2d 354, 357 (8th Cir.1972); Airlines Stewards & Stewardesses Association, Local 550 v. Caribbean Atlantic Airlines, Inc., 412 F.2d 289, 291-92 (1st Cir.1969); Rutland Railway Corp. v. Brotherhood of Locomotive Engineers, 307 F.2d 21, 34-36 (2d Cir.1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). The issues in Count I do not involve an attempt to bring about a new collective bargaining agreement or to change the terms of the agreement negotiated in October 1985 by the railroad and the union. The claim asserted in Count I therefore cannot be termed a "major" dispute and must be arbitrated before federal court review is appropriate. See, e.g., Elgin, Joliet & Eastern Railroad Co. v. Burley, 325 U.S. 711, 723-24, 65 S.Ct. 1282, 1289-90, 89 L.Ed. 1886 (1945).
 
 III.
 
 8
 The lack of jurisdiction over Count I does not affect the district court's proper exercise of jurisdiction over Count II, which alleges a breach by the union of its duty of fair representation in negotiating the cap on voluntary severances. The issue of fair representation of union members has been a matter of federal court concern since the judicial inception of the duty in Steele v. Louisville & Nashville Railroad, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The question on appeal is whether the granting of BRAC's motion for summary judgment was correct.
 
 
 9
 The plaintiffs forthrightly assert that BRAC was more interested in preserving its own strength, by limiting the number of union members who could be terminated under the plan, than in allowing individual union members to fulfill their preference for severance pay. At oral argument, the plaintiffs candidly admitted that a union can properly concern itself with the strength of its finances and membership without running afoul of the duty of fair representation. Accepting the plaintiffs' characterization of BRAC's goals in negotiating the cap on severances, we affirm the grant of summary judgment.
 
 
 10
 The fact that a union negotiates with the primary goal of preserving its strength does not amount to a breach of the duty of fair representation; self-preservation is a legitimate goal in collective bargaining. There must be some union conduct that is "arbitrary, discriminatory, or in bad faith" for there to be a breach of the duty of fair representation. See Sutton v. Weirton Steel, 724 F.2d 406, 412 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). In this case, the union used seniority as the basis for choosing the workers to be given the severance pay. The plaintiffs do not attack seniority as a valid, non-arbitrary means of allocating union benefits. They concede that seniority is often used for that purpose. They further concede that the goal of preserving union strength was the actual goal of BRAC in this instance; it was not a post hoc assertion of a legitimate union purpose that masked a subjective, improper purpose. Since the union's goal was objectively legitimate and its subjective motivation is unquestioned, the union did not violate the duty of fair representation. See generally Harper & Lupu, Fair Representation as Equal Protection, 98 Harv.L.Rev. 1211 (1985).
 
 IV.
 
 11
 For the reasons expressed above, we affirm the district court's finding that the claim in Count I raises a "minor" dispute. But a "minor dispute" under the Railway Labor Act is one over which a federal court has no jurisdiction before arbitration. We are constrained to reverse that part of the district court's decision that addressed the merits of Count I. Having had no jurisdiction to hear Count I, the court below should have refrained from granting summary judgment on that count and should have dismissed it for want of jurisdiction. We affirm the grant of summary judgment on Count II; the plaintiffs' allegations do not amount to a claim for violation of the duty of fair representation.
 
 
 12
 AFFIRMED IN PART AND REVERSED IN PART.