915 F.2d 116
 135 L.R.R.M. (BNA) 2439, 116 Lab.Cas. P 10,301
 RAILWAY LABOR EXECUTIVES ASSOCIATION; American Railway &
Airway Supervisors Association; American Train Dispatchers
Association; Brotherhood of Locomotive Engineers;
Brotherhood of Maintenance of Way Employees; Brotherhood of
Railroad Signalmen; Brotherhood of Railway Carmen;
International Association of Machinists & Aerospace Workers;
International Brotherhood of Boilermakers and Blacksmiths;
International Brotherhood of Electrical Workers;
International Brotherhood of Firemen and Oilers; Sheet
Metal Workers International Association; Transportation
Communications International Union; Railroad Yardmasters of
America; United Transportation Union, Plaintiffs-Appellants,
and
Hotel Employees and Restaurant Employees International
Union; International Longshoremen's Association; National
Marine Engineer's Association; Seafarers International
Union of North America; Transport Workers Union of America,
Plaintiffs,
v.
CHESAPEAKE WESTERN RAILWAY; Southern Railway Company;
Norfolk & Western Railway Company; Norfolk
Southern Corporation, Defendants-Appellees,
and
Carolina Coastal Railway, Incorporated, Defendant.
RAILWAY LABOR EXECUTIVES ASSOCIATION; American Railway &
Airway Supervisors Association; American Train Dispatchers
Association; Brotherhood of Locomotive Engineers;
Brotherhood of Maintenance of Way Employees; Brotherhood of
Railroad Signalmen; Brotherhood of Railway Carmen;
International Association of Machinists & Aerospace Workers;
International Brotherhood of Boilermakers and Blacksmiths;
International Brotherhood of Electrical Workers;
International Brotherhood of Firemen and Oilers; Sheet
Metal Workers International Association; Transportation
Communications International Union; Railroad Yardmasters of
America; United Transportation Union, Plaintiffs-Appellants,
and
Hotel Employees and Restaurant Employees International
Union; International Longshoremen's Association; National
Marine Engineer's Association; Seafarers International
Union of North America; Transport Workers Union of America,
Plaintiffs,
v.
CHESAPEAKE WESTERN RAILWAY; Southern Railway Company;
Norfolk & Western Railway Company; Norfolk
Southern Corporation, Defendants-Appellees,
and
Carolina Coastal Railway, Incorporated, Defendant.
 Nos. 90-2677, 90-2697.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 16, 1990.
Decided Sept. 17, 1990.
As Amended Dec. 20, 1990.
 
 John O'Brien Clarke, Jr., argued (David J. Strom, on brief), Highsaw, Mahoney & Clarke, P.C., Washington, D.C., for plaintiffs-appellants.
 Jeffrey Stephen Berlin, Richardson, Berlin & Morvillo, Washington, D.C., argued (Mark E. Martin, Richardson, Berlin & Morvillo, Washington, D.C., William P. Stallsmith, Jr., Norfolk, on brief), for defendants-appellees.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 The Railway Labor Executives' Association and several other railroad labor unions ("Unions") appeal an order of the district court granting summary judgment dismissing the Unions' action against Norfolk Southern Railway Co. and some of its subsidiaries ("NS") seeking declaratory and injunctive relief under the Railway Labor Act ("RLA"), 45 U.S.C. Secs. 151, et seq. We dismiss the appeal in part as moot, and affirm in all other respects.
 
 I.
 
 2
 This case arises from the displacement of railroad workers by the sale and lease of certain railroad lines by NS.
 
 
 3
 In October 1987, NS identified 2,700 miles of its system that were unprofitable. 1,500 miles had no potential for profitability and were slated for abandonment; the remaining 1,200 marginally-profitable lines were to be sold or leased to "short line" operators--small railroads that could operate the lines more economically than NS. As of late May 1990, approximately 810 miles had been transferred under this program. In each instance, the transferee short-line railroad operates the line with its own employees.
 
 
 4
 All of the transfers are subject to the jurisdiction of the Interstate Commerce Commission ("ICC"). Where the transfer is to an operating ICC-regulated "carrier," the ICC authorization is issued under 49 U.S.C. Sec. 11343. In these transactions, the ICC must impose certain "employee protective conditions." 49 U.S.C. Sec. 11347.[1] On the other hand, transfers to entities that have not before been "carriers" under the ICC are governed by 49 U.S.C. Sec. 10901; no employee protective measures are generally imposed. A key transaction at issue in this case is of this latter type--550 miles of lines sold by NS to Wheeling & Lake Erie Railway Co. (W & LE), a newly-formed corporation.
 
 
 5
 The Unions filed this action on August 4, 1989, and amended their complaint December 12, 1989. The complaint challenged NS' authority to transfer lines without bargaining under the RLA. The Unions sought declaratory relief that bargaining was required and injunctive relief prohibiting further transfers until bargaining was complete. On December 19, NS answered the complaint and counterclaimed for a declaratory judgment that the dispute is "minor" under the RLA and for an injunction prohibiting the Unions from striking over the dispute.
 
 
 6
 The parties filed cross-motions to dismiss and/or for summary judgment. On February 16, 1990, after hearing argument, the district court entered an order granting NS summary judgment on its declaratory judgment claim and dismissing the Unions' complaint, and noted that an opinion would be forthcoming.
 
 
 7
 The February 16 order did not dispose of NS' request for a strike injunction, and on March 12, the Unions filed a competing motion to enjoin the then-pending sale of 550 miles of track to W & LE. This motion sought to preserve the status quo until the completion of arbitration of the Unions' claims (the mandatory remedy for "minor" disputes under the RLA). On May 15, the district court denied the Unions' motion. It further denied NS a strike injunction because a strike was not then threatened, but without prejudice to a renewal of the motion should circumstances change. On May 17, the Unions filed their notice of appeal, and the district court denied their motion to enjoin consummation of the W & LE transaction pending appeal. Undaunted, the Unions made an "emergency motion" for injunction pending appeal to this court on May 18. The emergency motion was denied, but consideration of this appeal was expedited. The W & LE transaction had actually already been completed on May 17.
 
 II.
 
 8
 NS has moved to dismiss the appeal. In part, NS argues that the Unions' claim for injunctive relief against the W & LE transaction was mooted by its occurrence.[2]
 
 
 9
 The Unions' complaint is a broad attack on NS' entire policy of transferring lines without bargaining, and requests injunctive relief against any such transfers. In its motion to dismiss the appeal, however, NS argues that, as regards any transaction (such as the sale to W & LE) that has been completed, the Unions' request for injunctive relief is moot. We agree. An appeal of the denial of an injunction to prohibit an act is rendered moot by the happening of the act. Seafarers Int'l Union v. National Marine Services, Inc., 820 F.2d 148 (5th Cir.), cert. denied, 484 U.S. 953, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987); IBTCWHA v. Western Air Lines, Inc., 854 F.2d 1178 (9th Cir.1988). Therefore, to the extent the Unions seek to enjoin the occurrence of past events, their appeal is dismissed as moot.
 
 III.
 
 10
 The heart of this case is whether the district court had jurisdiction over the dispute between the parties. Under the RLA, disputes that arise between a railroad and its employees are divided into two categories. Disputes arising from grievances or under the collective bargaining agreement are subject to compulsory arbitration. RLA Sec. 3, 45 U.S.C. Sec. 153. The courts have rather inappropriately labeled these disputes "minor." During arbitration of a "minor" dispute, the employer may make changes in working conditions in accordance with his interpretation of the collective bargaining agreement.
 
 
 11
 A "major" dispute, governed by RLA Sec. 6, 45 U.S.C. Sec. 156, involves the creation or change of a collective bargaining agreement. These disputes are resolved through a lengthy process of negotiation, compulsory mediation, voluntary arbitration, and, if all else fails, strikes and lockouts. During this process, the employer may not impose a unilateral change in the working condition being negotiated.
 
 
 12
 Distinguishing a major from a minor dispute can be difficult, but the test is deliberately tilted toward finding a dispute minor:
 
 
 13
 Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement. Where, in contrast, the employers' claims are frivolous or obviously insubstantial, the dispute is major.
 
 
 14
 Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, --- U.S. ----, 109 S.Ct. 2477, 2482, 105 L.Ed.2d 250 (1989).
 
 
 15
 NS asserts just such a contractual right to transfer lines. NS argues that the furlough and reduction in force provisions of its collective bargaining agreement inescapably imply that it has unimpeded power to sell lines and lay off workers. In addition, NS presented evidence of a past practice of acquiescence by the unions in this interpretation.
 
 
 16
 We agree with the district court's conclusion that NS' position is "arguably justified" by the agreement. A railroad has a "light burden" to establish arbitrability under the RLA. Consolidated Rail, 109 S.Ct. at 2482. A district court need not, indeed should not, assess the relative merits of the parties' competing interpretations of the contract in order to find the dispute "minor." If the railroad's assertion that the collective bargaining agreement controls the dispute rises above the "frivolous or obviously insubstantial," then the court must dismiss the action for lack of subject matter jurisdiction. Kushto v. Brotherhood of Railway, Airline and Steamship Clerks, 818 F.2d 290, 293 (4th Cir.1987) (district court may not address merits of minor dispute, but must instead dismiss for lack of jurisdiction).[3] In this case, the district court found:
 
 
 17
 In none of [the collective bargaining agreements] is there any restriction on the right of the carrier to sell, lease, abandon, or grant trackage rights over its rail lines. Nor do the agreements obligate [NS] to require that a purchaser or lessee of a rail line assume the parties' existing collective bargaining agreements, or hire the carriers' employees. Rather, recognizing that a carrier's discontinuance of operations may cause jobs and work assignments to be eliminated or reduced and employees to be reassigned to different positions, the agreements include provisions, in various forms, explicitly reserving to [NS] the flexibility to abolish jobs and furlough employees as a result of a sale, lease, abandonment, or other disposition of a rail line.
 
 
 18
 Railway Labor Executives' Ass'n v. Chesapeake Western Ry., 738 F.Supp. 1544, 1551 (E.D.Va., 1990).
 
 
 19
 This reasoning certainly presents an "arguably justified" interpretation of the existing agreements; accordingly, the dispute is minor.[4]
 
 IV.
 
 20
 Unlike most minor disputes, the subject matter of this case is actually the subject of current collective bargaining by the parties. The Unions attempt to complicate the major/minor dispute analysis with references to this bargaining. We are unpersuaded by their argument.
 
 
 21
 Soon after April 1, 1988,[5] the Unions filed notices, pursuant to Sec. 6 of the RLA (45 U.S.C. Sec. 156), that they sought bargaining for new agreements concerning job security in the event of rail line transfers. The negotiations have proven fruitless, even with the RLA-prescribed assistance of the National Mediation Board. President Bush has recently created a Presidential Emergency Board, pursuant to RLA Sec. 10 (45 U.S.C. Sec. 160), to further mediate the dispute. Executive Order No. 12,714, 55 Fed.Reg. 19047 (1990).
 
 
 22
 The Unions rely primarily on these Sec. 6 notices and the ensuing two years of negotiation to show that the dispute is "major." To be sure, that dispute over prospective contract rights is major. Accordingly, the railroad must maintain the status quo during those negotiations, and may not unilaterally impose an amendment to the collective bargaining agreement. The Achilles' heel of the Unions' argument is that the railroad's actions are "arguably justified" by the existing agreement. The service of a Sec. 6 notice and the beginning of bargaining over the proposed changes does not convert a minor dispute into a major one. General Committee of Adjustment v. CSX R.R. Corp., 893 F.2d 584, 594 (3d Cir.1990); CSX Transp., Inc. v. United Transp. Union, 879 F.2d 990 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 720, 107 L.Ed.2d 740 (1990). Therefore, the railroad's sales do not alter the status quo in violation of the RLA.
 
 V.
 
 23
 Finally, the Unions argue that, notwithstanding that the dispute is minor and must be resolved through arbitration, the district court erred by not issuing an injunction to preserve the status quo. The Unions' logic is that, if they win the arbitration, they cannot get whole relief unless the status quo has been preserved in the interim.
 
 
 24
 To the extent this issue involves the W & LE or other past transfers, it is moot for the reasons we have stated above. In any event, the unions' assertions are meritless, and are rejected by all recent authority on point.[6] The very fact of arbitration presupposes that the railroad's interpretation will not always prevail; nonetheless, the RLA permits a railroad to proceed to operate under its interpretation of the agreement during the arbitration.[7]
 
 
 25
 This appeal is dismissed to the extent it is moot. In all other respects, the judgment below is affirmed.
 
 
 26
 AFFIRMED IN PART AND DISMISSED IN PART.
 
 
 
 [1]
 These conditions include up to six years of wage protection
 
 
 [2]
 NS also initially argued that because its request for a strike injunction could still be renewed in the district court, and because the district court's memorandum opinion explaining its February 16 order had not yet issued, the Unions' appeal was interlocutory. Two events below resolved this argument
 On June 13, 1990, the district court issued an opinion explaining its February 16 and May 15 orders. The Unions informed the district court of the dispute on appeal concerning the finality of the judgment, and on July 3, the district court entered a final judgment for NS. The Unions noted appeal No. 90-2697 immediately, and NS consented to the Unions' motion to consolidate. This court granted the motion. Thus ended any dispute over the finality of the judgment below.
 
 
 [3]
 The district court does have the limited jurisdiction to enjoin strikes over minor disputes. Consolidated Rail, 109 S.Ct. at 2481, citing Trainmen v. Chicago R. & I.R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957)
 
 
 [4]
 Inasmuch as NS' position is "arguably justified" by the existing agreement, we need not address the more difficult question whether a railroad's status quo obligation during resolution of a major dispute prohibits it from divesting itself of lines. The Supreme Court has answered this question no as regards sales of an entire railroad. Pittsburgh & Lake Erie Ry. Co. v. Ry. Labor Executives' Ass'n, --- U.S. ----, 109 S.Ct. 2584, 2596, 105 L.Ed.2d 415 (1989) ("[T]he decision of a railroad employer to go out of business and consequently reduce to zero the number of available jobs is not a change in the conditions of employment forbidden by the status quo provision of Sec. 156."). The Seventh and Eighth Circuits have extended this rule to line sales like the ones involved here. Chicago & North Western Transp. Co. v. Railway Labor Executives' Ass'n, 908 F.2d 144, 1550-1551 (7th Cir.1990); Railway Labor Executives' Ass'n v. Chicago & North Western Transp. Co., 890 F.2d 1024 (8th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990)
 
 
 [5]
 April 1, 1988, was the expiration date of the moratorium on RLA Sec. 6 bargaining notices, as set by the 1984 National Agreement to which nearly all railroads and unions were parties
 
 
 [6]
 See, e.g., General Committee, 893 F.2d at 593; CSX Transportation, 879 F.2d at 1004-05; International Ass'n of Machinists v. Eastern Air Lines, 826 F.2d 1141, 1145-51 (1st Cir.1987). Compare Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960) (district court may condition granting of strike injunction on railroad's maintaining status quo during arbitration)
 
 
 [7]
 Because of our disposition of this case based on the district court's lack of jurisdiction over minor disputes, we decline to address the merit of its alternative holding that the employee protective measures the ICC must impose on Sec. 11343 transactions are exclusive and displace the RLA. As the Supreme Court recently admonished:
 we "are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."
 It is urged that the [Interstate Commerce Act] provides a comprehensive scheme for resolution of labor protection issues arising out of ICC-regulated transactions and that rail labor must take advantage of those procedures rather than strike. We are unpersuaded that this is the case.... [N]o applicable provision has been called to our attention that imposes any duty on rail unions to participate in ICC proceedings and to seek ICC protections with which they must be satisfied.... We find nothing in the ICA that relieved [the railroad] of [its duty to bargain], nor anything in that Act that empowers the ICC to intrude into the relationship between the selling carrier and its railroad unions.
 Pittsburgh & Lake Erie Railway Co., 109 S.Ct. at 2596, 2598 (citations omitted).