972 F.2d 340
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
LOCAL UNION 175, affiliated with the International
Brotherhood of Teamsters, AFL-CIO-CLC, Plaintiff-Appellant,
v.
INITIAL SERVICES INV., Inc., a Georgia corporation, d/b/a
Chartex Services, Incorporated, Defendant-Appellee.
 No. 92-1083.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 1, 1992
Decided: August 3, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-91-1144-2)
 ARGUED: Carl Edward Hostler, Hostler & Segal, Charleston, West Virginia, for Appellant.
 Scott D. Spiegel, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, Kentucky, for Appellee.
 ON BRIEF: Stanley Milton Hostler, Hostler & Segal, Charleston, West Virginia, for Appellant.
 Debra K. Goff-Stamper, Lynch, Cox, Gilman & Mahon, P.S.C., Louisville, Kentucky, for Appellee.
 S.D.W.Va.
 Vacated and Remanded.
 Before ERVIN, Chief Judge, and HALL and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Teamsters Local 175 appeals the district court's denial of its request for an injunction prohibiting the appellee company from closing a plant pending arbitration of grievances concerning the closing. We vacate the judgment of the district court and remand with instructions to dismiss the case as moot.
 
 I.
 
 2
 Appellee Initial Services Investment, Inc., operated a textile production plant, employing sixty-eight workers, in Charleston, West Virginia, under the name Chartex Services, Inc. Teamsters Local 175 represents the Charleston plant's employees; however, a similar Chartex facility in Huntington, West Virginia, is non-union, and a third in Youngstown, Ohio, has a union unaffiliated with Local 175.
 
 
 3
 On October 28, 1991, as required by the Worker Adjustment and Retraining Notification Act of 1988 (WARN), 29 U.S.C. § 2101 et seq., Chartex notified its Charleston employees that it was closing the plant on December 9, 1991. Though the production operations performed in Charleston were being transferred to Huntington and Youngstown, Chartex informed the employees that none of them would be given the right to transfer, and that consequently all would be terminated.
 
 
 4
 On November 14, 1991, the union filed suit in district court to enjoin the closing pending arbitration of two grievances the union had filed concerning it. On November 25, 1991, the district court issued a ten-day temporary restraining order and asked the parties for briefing on the pertinent legal issues. On December 5, 1991, after a hearing, the district court extended the restraining order for ten more days. However, on December 13, 1991, the district court vacated the restraining order and denied a preliminary injunction. The district court ruled that the dispute was not arbitrable under the parties' collective bargaining agreement. The court did not address the company's alternate contention that, because arbitration is an adequate remedy, an injunction prohibiting the closing would be improper in any event. See Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 254 (1970) (injunction prohibiting strike over arbitrable dispute should issue only if injunction would be proper under "ordinary principles of equity"). We describe the parties' contentions, which are not pertinent to our disposition, in the margin.[1]
 
 II.
 
 5
 After the district court's order, the plant closing went forward. All production work at the plant has been discontinued, and sixty of the sixty-eight employees have lost their jobs. A small crew of eight former production workers now operates the facility as a distribution depot. To the extent equipment and assets have been transferred, this case is moot.
 
 
 6
 In Railway Labor Executives' Ass'n v. Chesapeake Western Railway, 915 F.2d 116 (4th Cir. 1990), cert. denied, 111 S.Ct. 1312 (1991), the sale of a Norfolk Southern rail line was at issue. Among other relief, the plaintiff unions sought to enjoin the line sale pending bargaining over the dispute under the Railway Labor Act. The sale went forward while the appeal was pending. We held that the claim for injunctive relief against the line sale was moot: "An appeal of the denial of an injunction to prohibit an act is rendered moot by the happening of the act." 915 F.2d at 118.
 
 
 7
 The entire relief prayed for in the union's complaint is:
 
 
 8
 Plaintiff prays that the Defendant be temporarily restrained and preliminarily enjoined pending the outcome of the above grievances from transferring any work, machinery, or any capital assets from the Charleston, West Virginia facility.
 
 
 9
 Insofar as these things have happened, they cannot be enjoined.
 
 III.
 
 10
 As we stated above, Chartex has not moved every asset from Charleston; instead, it has converted its plant to a small distribution center. No removal of the remaining assets is imminent. The power of a federal court may not be used to enjoin the conjectural. Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991). Unless Chartex desires to move these remaining assets, there is no "case or controversy" concerning them. A federal court may not issue a perpetual injunction prohibiting acts that may never occur, or that may occur under circumstances that cause no controversy.
 
 IV.
 
 11
 Because this matter became moot while on appeal, thus depriving the union of its right to our review, the union should be relieved of the judgment against it. United States v. Munsingwear, 340 U.S. 36 (1950). The Munsingwear rule prevents the judgment below from "spawning any legal consequences." 340 U.S. at 41. Consequently, dismissal leaves open and unresolved the questions discussed by the district court in its opinion.[2] Kennedy v. Block, 784 F.2d 1220, 1225 (4th Cir. 1986).
 
 
 12
 The judgment of the district court is vacated. The case is remanded with instructions to dismiss the union's complaint as moot.
 
 VACATED AND REMANDED WITH INSTRUCTIONS
 
 
 [1]
 The union's grievances alleged that the company was transferring work and ignoring seniority in violation of the collective bargaining agreement. The collective bargaining agreement provides a procedure for processing grievances, with arbitration as the final step. The agreement defines grievance as "any controversy, complaint, misunderstanding, or dispute." This boundless definition is limited, however, by a lengthy management rights clause (emphasis added):
 
 
 [7]
 1 MANAGEMENT:
 The management of the plant covered by this agreement and the direction of the working forces therein are solely and exclusively the functions and prerogatives of the management of the Company subject only to any specific provisions of this agreement. All of the rights, functions and prerogatives of management which are not expressly modified by one or more explicit provisions of this agreement are reserved and retained exclusively to the Company and shall not be subject to arbitration nor shall the exercise thereof be otherwise questioned by the Union as a violation of this agreement except that any claim that the Company has exercised such rights contrary to the provisions of this agreement may be taken up as a grievance. In no event shall any right, function or prerogative of management ever be deemed or construed to have been modified, diminished or impaired by any past practice or course of conduct, or otherwise than by explicit provision of this agreement.
 Specifically, but without in any manner limiting or affecting the generality of the foregoing and subject to any specific provision of this agreement, it is distinctly understood and agreed that this agreement shall never be deemed or construed to impair the Company's right in its sole discretion and judgment to, determine the services to be rendered; determine the customers with whom it will deal and the prices at which and terms upon which its services will be sold; determine the size of the working force and policies affecting the selection of employees; establish quality standards for its services; change, combine or establish new departments or divisions; discontinue existing departments or divisions; introduce new and improved production methods and facilities; change existing production methods and facilities; and subcontract or procure others to do such other production and maintenance work of the business as the Company may deem advisable or necessary where such action is either economically justified or there are not employees working who are capable of performing the work satisfactorily or the Company does not have equipment available to satisfactorily perform the work.
 The company argued, and the district court agreed, that the decision to close the Charleston plant was a management prerogative under this section, that no other provision of the agreement limited it, and that the grievance was therefore not subject to arbitration. The union counters that management's right to discontinue operations is confined to "departments" and "divisions," and an entire plant is not included. Inasmuch as the dispute requires interpretation of the agreement, says the union, arbitration is required.
 Ordinarily, arbitrability is an issue for judicial determination. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649650 (1986). However, there is an important exception: "unless the parties clearly and unmistakably provide otherwise." Id. at 649. The collective bargaining agreement provides (emphasis added):
 
 
 [11]
 3 AUTHORITY OF THE ARBITRATOR:
 The arbitrator shall not have the authority to amend or modify this agreement or to establish new terms or conditions under this agreement. The arbitrator shall determine any question of arbitrability ....
 The union argues that the English language is hardly susceptible of a more clear and unmistakable provision than "The arbitrator shall determine any question of arbitrability." The district court held that it would be futile in this case to have an arbitrator decide arbitrability. Because this case is moot, we need not decide whether the "clear and unmistakable" exception to judicial determination of arbitrability is itself subject to a "futility" exception.
 
 
 [2]
 The union maintained at oral argument that the company had initially agreed to arbitrate the grievances, but has refused to do so in reliance on the district court's order. That order will henceforth have no preclusive effect on any union attempt to compel arbitration