Stephen E. McLANE, General Partner of Auto Engineering Limited Partnership, Plaintiff, Appellant,

v.

MERCEDES–BENZ OF NORTH AMERICA, INC., Defendants, Appellees.

Stephen E. McLANE, General Partner of Auto Engineering Limited Partnership, Plaintiff, Appellee,

v.

MERCEDES–BENZ OF NORTH AMERICA, INC., Defendant, Appellant.

Nos. 93–1034, 93–1035.

United States Court of Appeals, First Circuit.

Heard Aug. 5, 1993.

Decided Sept. 8, 1993.

Alan Garber, with whom Clair A. Carlson, Jr., Paul D. Boynton, and Mason & Martin, Boston, MA, were on brief, for Stephen E. McLane, General Partner of Auto Engineering Limited Partnership.

Mark P. Szpak, with whom Daniel J. Klau and Ropes & Gray, Boston, MA, were on brief, for Mercedes–Benz of North America, Inc.

William N. Berkowitz, with whom Claudia V. Geschwind and Bingham, Dana & Gould, Boston, MA, were on brief, for BMW of North America, Inc.

Before CYR and STAHL, Circuit Judges, and FUSTE,* District Judge.

STAHL, Circuit Judge.

Appellant Stephen E. McLane, General Partner of Auto Engineering Limited Partnership ("Auto Engineering"), challenges the district court's decisions both to deny his motion for a preliminary injunction against BMW of North America, Inc. ("BMW–NA") and to grant his motion for the same for only ninety days against Mercedes–Benz of North America, Inc. ("MB–NA"). Finding his appeal moot, we dismiss and remand the case to the district court for such further proceedings as may be appropriate.

* Of the District of Puerto Rico, sitting by designation.

## I.

### Background

In September 1987, a consortium of investors led by McLane formed Auto Engineering for the purpose of acquiring the assets of Auto Engineering, Inc. ("AEI"). Among those assets were Mercedes–Benz and BMW franchises, a Lexington, Massachusetts, automobile dealership facility out of which AEI had run those franchises, and real property in Burlington, Massachusetts, which was purchased as the future location of the Mercedes–Benz dealership. Having acquired AEI's assets, Auto Engineering, pursuant to its dealership agreements with MB–NA, moved its Lexington-based Mercedes–Benz dealership to the Burlington location. The BMW dealership remained in Lexington until May 17, 1989, when BMW–NA acceded to Auto Engineering's request to move the dealership to the Burlington premises.

Unfortunately for Auto Engineering, the move to Burlington coincided with the general decline in the Massachusetts and national economies. Decreased automobile sales coupled with the high overhead costs of the Burlington facility caused Auto Engineering to experience heavy financial losses. According to Auto Engineering, it incurred cumulative operating losses in excess of $4,000,000 between the years of 1988 and 1992.

By the middle of 1991, after having unsuccessfully applied to an MB–NA investment program for financial restructuring assistance, Auto Engineering began exploring the possibility of selling the Burlington location. In November 1991, Auto Engineering, without seeking approval from either franchisor, entered into a purchase and sale agreement with Circuit City Stores, Inc. ("Circuit City") for the Burlington premises. Shortly thereafter, Auto Engineering advised MB–NA and

BMW–NA that it was proceeding with plans to sell the Burlington property and again sought permission to return both dealerships to the Lexington location. Each company refused this request.

In September 1992, Auto Engineering learned that Circuit City, pursuant to the purchase and sale agreement, would require it to vacate the Burlington premises by November 2, 1992. Accordingly, on that date, and without obtaining approval from either franchisor, Auto Engineering moved both dealerships back to Lexington. Considering this relocation a breach of the express terms of the dealership agreement, BMW–NA notified Auto Engineering by letter dated November 3, 1992, that it was terminating the agreement effective January 10, 1993. The following day, MB–NA sent Auto Engineering a similar termination letter.[1]

In response to these termination letters, on or about December 10, 1992, McLane commenced an action in state court seeking to enjoin the termination of the franchises. The complaint alleged, *inter alia*, that BMW–NA and MB–NA had violated Mass. Gen.L. ch. 93B, § 4(3)(e), by terminating their respective dealer agreements "without good cause"[2] and sought injunctive relief, damages, and attorneys' fees.

On December 18, 1992, with MB–NA's assent, BMW–NA removed the action to federal court. Shortly thereafter, Auto Engineering moved for a preliminary injunction. On January 7, 1993, after a two-day hearing on that motion, the district court denied the motion as to BMW–NA but granted it as to MB–NA for a period of ninety days, expiring on April 11, 1993.[3] The court also denied Auto Engineering's oral request to stay the terminations pending appeal. On January 8, 1993, Auto Engineering filed a notice of ap-

1. Auto Engineering's dealer agreements with BMW–NA and MB–NA contain clauses providing that the dealer must receive the written approval of the manufacturers before relocating the dealership to another site.

2. Mass.Gen.L. ch. 93B, § 4(3)(e) provides in pertinent part:
It shall be deemed a violation of paragraph (a) of section three for a manufacturer, ... notwithstanding any term or provision of a franchise or selling agreement, to cancel or termi-

nate the franchise or selling agreement of a motor vehicle dealer without good cause....

3. Because MB–NA had not filed its dealer agreement with the Attorney General's office as required under Mass.Gen.L. ch. 93B, § 8, the court granted Auto Engineering's motion for an injunction against MB–NA for a period lasting ninety days from January 7, 1993, the date of MB–NA's compliance with the filing requirement.

peal and an expedited motion requesting that we stay the terminations pending appeal.[4] On that date, we stayed the BMW–NA termination for one week. Subsequently, on January 15, 1993, we denied Auto Engineering's emergency request for a stay pending appeal. Accordingly, by April 11, 1993, both BMW–NA's and MB–NA's termination of Auto Engineering's dealer agreements had become effective.

## II.

### Discussion

Both BMW–NA and MB–NA contend that, because the events which Auto Engineering sought to enjoin have in fact occurred, its appeal from the district court's order denying injunctive relief is moot. We agree.

 It is well settled that an appeal from the denial of a motion for a preliminary injunction is rendered moot when the act sought to be enjoined has occurred. *See, e.g., Oakville Dev. Corp. v. FDIC,* 986 F.2d 611, 613 (1st Cir.1993) ("When, as will often happen, the act sought to be enjoined actually transpires, the court may thereafter be unable to fashion [ ] meaningful [relief]. In such straitened circumstances, the appeal becomes moot."); *Railway Labor Executives Ass'n v. Chesapeake W. Ry.,* 915 F.2d 116, 118 (4th Cir.1990) (similar), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991); *Garza v. Westergren,* 908 F.2d 27, 29 (5th Cir.1990) (similar); *Gilpin v. American Fed'n of State, County, & Mun. Employees, AFL–CIO,* 875 F.2d 1310, 1313 (7th Cir.) (similar), *cert. denied,* 493 U.S. 917, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989); *Seafarers Int'l Union of N. Am. v. National Marine Servs., Inc.,* 820 F.2d 148, 151–52 (5th Cir.) (similar), *cert. denied,* 484 U.S. 953, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987); *Marilyn T., Inc. v. Evans,* 803 F.2d 1383, 1384–85 (5th Cir.1986) (similar); *In re Sewanee Land, Coal & Cat-*

tle, Inc., 735 F.2d 1294, 1295 (11th Cir.1984) (similar).

 Auto Engineering attempts to circumvent this rule by reframing its request for relief as one for "reinstatement" of the franchise agreements. This request is not, however, properly before us. The district court has not yet ruled on the merits of Auto Engineering's claims, nor has it considered such fact-intensive questions as whether reinstatement would be appropriate, or even possible, under the present circumstances. To the extent that the district court has addressed the post-termination issue of reinstatement at all, it has done so only in the context of ruling on Auto Engineering's request for a preliminary injunction. Because the district court has not yet resolved ultimate issues of liability and permanent equitable relief, we decline to address them prematurely in this interlocutory appeal.[5] *Cf. Marilyn T.,* 803 F.2d at 1384–85 (finding appeal moot and declining to order reinstatement of appellant's commercial license where the question of reinstatement would require the court to address issues as yet unresolved by the district court).

The sole issue on appeal is the district court's denial of Auto Engineering's request for an injunction preventing BMW–NA and MB–NA from terminating the dealer agreements. As both of those terminations have actually occurred, the appeal is moot. Accordingly, we *dismiss* the appeal and *remand* the case for any further appropriate proceedings.[6]

---

4. MB–NA filed a cross-appeal and a motion with this court, seeking relief from the portion of the district court's order that delayed the effective time of the MB–NA termination for ninety days. Given that the ninety days have now passed, MB–NA concedes that its cross-appeal is moot.

5. Needless to say, on remand, the district court will take such further action with respect to the reinstatement claim as it deems appropriate.

6. As a general rule, when a case becomes moot on appeal, we vacate the district court's decision and remand with a direction to dismiss. *See, e.g., United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950);

National R.R. Passenger Corp. v. International Ass'n of Machinists & Aerospace Workers, 915 F.2d 43, 48 (1st Cir.1990). In the case of interlocutory appeals, however, " 'the usual practice is just to dismiss the appeal as moot and not vacate the order appealed from.' " In re Tax Refund Litigation, 915 F.2d 58, 59 (2d Cir.1990) (quoting Gjertsen v. Board of Election Comm'rs, 751 F.2d 199, 202 (7th Cir.1984)). See also Marilyn T., 803 F.2d at 1385 (dismissing appeal and remanding for further appropriate proceed-

ings where district court's order was "an interlocutory order that had lost its effectiveness"); Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp., 746 F.2d 251, 254 (5th Cir.1984) (dismissing appeal and remanding case where appeal from denial of preliminary injunction moot); 13A Wright, Miller, & Cooper, Federal Practice and Procedure § 3533.10 at 435–36 (1984) (recommending dismissal rather than vacatur where appeal from interlocutory order is moot).