**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2340

JOSEPH DI BIASE, Individually and on behalf of similarly situated persons;
JOHN PRODORUTTI, Individually and on behalf of similarly situated persons;
DAVID BRASS, Individually and on behalf of similarly situated persons; RON
BEEGLE, Individually and on behalf of similarly situated persons; DAVID
BOBCOCK, Individually and on behalf of similarly situated persons; CARL VAN
LOON, Individually and on behalf of similarly situated persons;
INTERNATIONAL UNION, UNITED AUTOMOBILE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA, UAW,

Plaintiffs – Appellants,

v.

SPX CORPORATION,

Defendant – Appellee.

Appeal from the United States District Court for the Western District of North Carolina,
at Charlotte. Robert J. Conrad, Jr., District Judge. (3:14-cv-00656-RJC-DSC)

Argued: May 9, 2017                                    Decided: September 28, 2017

Before GREGORY, Chief Judge, KING, and KEENAN, Circuit Judges.

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge
King and Judge Keenan joined.

**ARGUED:** Narendra K. Ghosh, PATTERSON HARKAVY LLP, Chapel Hill, North
Carolina, for Appellants. Mark A. Hiller, ROBINSON, BRADSHAW & HINSON, P.A.,

Charlotte, North Carolina, for Appellee. **ON BRIEF:** Michael L. Fayette, PINSKY, SMITH, FAYETTE & KENNEDY, LLP, Grand Rapids, Michigan, for Appellants. David C. Wright, III, Cary B. Davis, Amanda R. Pickens, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellee.

---

GREGORY, Chief Judge:

The individual plaintiffs, retirees of SPX Corporation ("SPX"), their spouses and eligible dependents, and their labor union, the International Union United Automobile, Aerospace and Agricultural Implement Workers of America, UAW ("UAW"), (collectively, "Plaintiffs"), appeal the district court's denial of their motion for preliminary injunction. Because we conclude the district court did not abuse its discretion in finding that Plaintiffs failed to satisfy the requirements for a preliminary injunction, we affirm and remand for further proceedings.

I.

This case arises out of an underlying action to enforce the health benefits provisions of two court-approved settlement agreements. Signed in 2003 by the parties to a class action brought against SPX, the settlement agreements require SPX to provide lifetime healthcare coverage to identified retirees and their eligible family members through specified group health insurance plans or through "coverage which is substantially equivalent in benefits."[1] J.A. 33-39, 70-100, 114-20. Between 2004 and

---

[1] The language at issue in each settlement agreement is identical:

Notwithstanding any other provision hereof, any obligation on the part of SPX to provide coverage under a specified plan or its substantial equivalent shall be deemed to require only that SPX provide coverage which is substantially equivalent in benefits and it shall not be deemed to obligate SPX to provide coverage through an HMO, to maintain or replicate coverage in a particular network, to provide benefits through a structure under which the patient designates

(Continued)

2015, SPX provided insurance coverage for the retirees and their family members through various group health plans.

Between March and July 2014, SPX notified UAW representatives and Medicare-eligible retirees that effective January 1, 2015, it intended to change the arrangement by which healthcare benefits would be provided. Under the new arrangement, SPX would provide each beneficiary an annual healthcare reimbursement account ("HRA") containing up to $5,000 for beneficiaries to purchase their own healthcare plan from an insurance exchange secured and identified by SPX. The HRAs could also be used to reimburse covered individuals for Medicare Part B expenses, provide catastrophic drug coverage, and provide an additional $500 per year to those previously enrolled in a dental plan. SPX engaged the healthcare exchange OneExchange to assist individuals with the transition and the process of selecting insurance plans with funds available through the HRA accounts.

In November 2014, Plaintiffs filed the underlying class action[2] against SPX. They alleged that the HRA accounts offered by SPX were not substantially equivalent to their current healthcare benefits and that the implementation of SPX's new arrangement would breach the settlement agreements in violation of Section 301 of the Labor-Management

_____

a primary care physician or otherwise to regulate or affect the manner in which SPX makes such substantially equivalent benefits available.

J.A. 38, 117, 823-24.

[2] Plaintiffs' motion for class certification is currently pending before the district court. *Di Biase v. SPX Corp.*, No. 3:14-cv-0656-RJC-DSC (W.D.N.C. PACER No. 72).

4

Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). On December 15, 2014, Plaintiffs moved for a preliminary injunction, seeking to enjoin SPX from terminating the current healthcare plan and implementing the HRA accounts during the pendency of the action or until further order of the court. They asserted that absent injunctive relief, they would "suffer severe emotional distress and irreparable harm to their health and welfare." J.A. 825. The motion could not be resolved, however, before the HRA accounts went into effect on January 1, 2015, because the briefing schedule had not concluded by the end of the calendar year.[3]

At a September 2015 scheduling conference, the district court and the parties discussed the pending motion for preliminary injunction. The district court queried whether the motion was now moot given that the HRAs had already gone into effect. Plaintiffs argued that the motion was not moot and that it was now an appropriate time for a ruling on the merits because open enrollment would begin again in October 2015, with a new plan "coming up in January [2016]," and they "were going to be faced with the same issues all over again." J.A. 835-36.

On September 29, 2015, nearly nine months after the effective date of the HRA accounts, the district court denied Plaintiffs' motion as moot, and moreover held that Plaintiffs failed to meet the standard required for a preliminary injunction. As to the

---

[3] On December 31, 2014, the district court ordered that the motion for preliminary injunction be held in abeyance until it had the opportunity to review SPX's response. SPX filed a response on January 5, 2015, and the motion became ripe for review on January 15, 2015, when plaintiffs filed a reply.

5

issue of mootness, the district court noted that the purpose of a preliminary injunction is to preserve the status quo pending a final determination on the merits of the case. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citation omitted).[4] The court concluded that the status quo, the provision of health insurance through the group health insurance plans, had already changed with the implementation of the HRA accounts on January 1, 2015. Finding that the change Plaintiffs sought to prohibit had already occurred, the district court held that the motion was moot because a "request for an injunction to prohibit an act is rendered moot by the happening of the act." *Winston v. Fed. Bureau of Prisons*, No. 5:10-HC-2192-FL, 2011 W.L. 3664416, at *2 (E.D.N.C. Aug. 18, 2011) (citing *Ry. Labor Execs. Ass'n v. Chesapeake W. Ry.*, 915 F.2d 116, 118 (4th Cir. 1990)).

The district court alternatively concluded that Plaintiffs were unable to meet the standard required for a preliminary injunction as set forth in *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008). First, the court noted that granting the preliminary injunction and returning to the status quo would result in SPX having to revert to the group health insurance plan, "which would only cause more emotional distress and harm." J.A. 828. The court found that Plaintiffs were unable to show a likelihood of success on the merits.[5] It held that "the ultimate success of Plaintiffs'

---

[4] The Fourth Circuit has defined the status quo as "the last uncontested status between the parties which preceded the controversy." *Id.* at 320 (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) (citations omitted)).

[5] The district court determined that Plaintiffs failed to address threshold issues related to jurisdiction and standing under the LMRA and ERISA, as well as questions related to certification of the class, all of which it deemed potentially fatal to Plaintiffs' (Continued)

6

claims depends on the determination of whether the HRA structure provides 'substantially equivalent' health benefits." J.A. 827. According to the court, Plaintiffs failed to offer sufficient evidence to make such a determination, and a fact-sensitive inquiry such as this required a more developed evidentiary record, which would only become available through discovery. J.A. 827-28.

The district court then held that Plaintiffs failed to show that they would suffer the type of irreparable injury that requires the "extraordinary and drastic" remedy of a preliminary injunction. J.A. 828 (quoting *Munaf v. Geren*, 553 U.S. 674, 690 (2008)). Other than Plaintiffs' conclusory statements that nothing could compensate them for the administrative burden and impediment to effective coverage, the court found that Plaintiffs had not offered any evidence that no remedy at law exists.[6] J.A. 828.

Plaintiffs timely appealed to this Court.

## II.

On appeal, Plaintiffs maintain that the district court abused its discretion by failing to grant the preliminary injunction. SPX counters that the motion was moot and that in

---

claims. But the court concluded that for purposes of determining the appropriateness of a preliminary injunction, examination of these issues was not necessary to determine the likelihood of whether Plaintiffs' claims would succeed on the merits. J.A. 827.

[6] The court also summarily concluded that Plaintiffs failed to show that the balance of equities tips in their favor or that an injunction is in the public interest. J.A. 828-29.

any event, plaintiffs have not established any of the four criteria necessary to grant a preliminary injunction.

This Court reviews a district court's denial of a motion for preliminary injunction for abuse of discretion. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012). In our analysis, "we review the district court's factual findings for clear error and review its legal conclusions de novo." *Pashby*, 709 F.3d at 319 (citing *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011)). When a motion for preliminary injunction is denied as moot, there are "no factual or legal findings for this court to review." Rather, in such cases, we must determine whether the court abused its discretion by failing to exercise it. *Aggarao*, 675 F.3d at 366 (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 620 (6th Cir. 2003)).

A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit. *Pashby*, 709 F.3d at 319 (quoting *Sun Microsystems, Inc. v. Microsoft Corp.* (*In re Microsoft Corp. Antitrust Litig.*), 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). A preliminary injunction shall be granted only if the moving party clearly establishes entitlement to the relief sought. *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981).

A plaintiff seeking a preliminary injunction must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Courts considering whether to impose

8

preliminary injunctions must separately consider each *Winter* factor. *Pashby*, 709 F.3d at 321.

A plaintiff need not establish a "certainty of success," but must make a clear showing that he is likely to succeed at trial. *Id.* Similarly, a plaintiff must demonstrate more than just a "possibility" of irreparable harm. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment. *Hughes Network Sys., Inc. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).

SPX contends, relying on *Winston v. Federal Bureau of Prisons*, No. 5:10-HC-2192-FL, 2011 W.L. 3664416, at *2 (E.D.N.C. Aug. 18, 2011), and *Railway Labor Executives Association v. Chesapeake Western Railway*, 915 F.2d 116, 118 (4th Cir. 1990), that Plaintiffs' motion for preliminary injunction was mooted by the January 1, 2015 implementation of the HRA accounts. Plaintiffs counter that based on *Pashby* and *Aggarao*, the motion is not moot, and that the district court erred when it failed to grant,

9

even after January 1, 2015, a preliminary injunction directing the return to the status quo — the group health plans provided under the settlement agreements as of March 2014. We conclude that the motion for preliminary injunction was not moot, and further, that the district court did not abuse its discretion in denying the motion, as Plaintiffs have failed to meet the requirements for a preliminary injunction under *Winter*.

## A. Mootness

The principal function of a preliminary injunction is to maintain the status quo. *Pashby*, 709 F.3d at 319. Thus a "request for an injunction to prohibit an act is rendered moot by the happening of the act." *Winston v. Federal Bureau of Prisons*, No. 5:10-HC-2192-FL, 2011 W.L. 3664416, at *2 (E.D.N.C. Aug. 18, 2011) (citing *Railway Labor Execs. Ass'n v. Chesapeake Western Ry.*, 915 F.2d 116, 118 (4th Cir. 1990), J.A. 826-27. But a preliminary injunction can also act to restore, rather than merely preserve, the status quo, even when the nonmoving party has disturbed it. *Aggarao*, 675 F.3d at 378.

In *Aggarao*, an employee and citizen of the Philippines filed suit against his employer and sought a preliminary injunction to order the employer to resume providing him with medical care in the United States following a serious workplace injury. The employer argued that the injunction was improper because it had discontinued financial assistance for medical care to the employee nearly a year earlier, thus a preliminary injunction would not preserve the status quo. This Court disagreed, holding that "it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions," [and that] "[s]uch an injunction restores rather than disturbs, the status quo ante." *Id.* at 378 (citations omitted).

10

In *Pashby*, which involved North Carolina's implementation of more restrictive Medicaid eligibility requirements for in-home care, the plaintiffs filed suit and moved for a preliminary injunction to prohibit implementation of the new requirements. The district court granted the motion and on appeal, this Court agreed that the preliminary injunction was appropriate. Because the plaintiffs filed the motion before the policy change took effect, the status quo was the status before the change. *Id.* at 320. This Court also rejected the employer's argument that "delays inherent in the judicial system somehow altered the status quo to the [plaintiffs'] detriment." *Id.*[7]

In the case at hand, the district court concluded that the motion for preliminary injunction was rendered moot by the implementation of the HRAs on January 1, 2015. But the court's analysis should not have ended there. The court should have considered whether, in light of this Court's decisions in *Pashby* and *Aggarao*, Plaintiffs' motion was moot even after HRA implementation.

Plaintiffs filed their lawsuit and motion for preliminary injunction in 2014, before SPX cancelled the group health insurance and implemented the HRAs, with the intent of preserving the status quo, and now seek to restore it. They argue the motion was not moot and the district court retained the legal authority to restore the status quo. *See Pashby*, 709 F.3d at 320; *Aggarao*, 675 F.3d at 378. SPX, relying on *Winston* and

---

[7] The Second Circuit has also concluded that preliminary injunctions can restore the status quo after it has been disturbed. *Savoie v. Merchants Bank*, 84 F.3d 52, 59 (2d Cir. 1996) (district court had the power to restore the status quo where bank disbursed funds contrary to magistrate judge's recommendation to set aside funds for attorney's fees).

11

*Railway Labor Executives*, argues that the motion is moot because the change the plaintiffs sought to prohibit – implementation of the HRAs – is complete and cannot be undone without causing administrative and financial concerns, confusion, gaps in coverage and possible financial loss. Undoing the HRA approach and reverting to group coverage, according to SPX, would require action by both SPX and the retirees, who would have to terminate the plans purchased with their HRAs, only to switch again to return to HRAs if SPX prevails on the merits. But these logistical hurdles, did not, as SPX claims, make a return to the status quo "impossible," and they certainly did not render Plaintiffs' motion moot. SPX's implementation of the HRAs did not strip the district court of its power to determine whether parties should return to the status quo pending the outcome of the underlying dispute. Accordingly, we agree that based on this Court's decisions in *Aggarao* and *Pashby*, Plaintiffs' motion was not mooted by HRA implementation. We adopt the view here that a motion for preliminary injunction filed before the act to be enjoined has occurred, and subsequently intended to restore the status quo once it has been disturbed, is not moot.

## B. Defendant's Threshold Defenses

Next, this Court considers the threshold issues related to jurisdiction and standing pursuant to the LMRA and ERISA, and regarding class certification that SPX first raised in the district court below. The district court noted in its opinion that SPX asserted these issues, to which Plaintiffs had failed to respond, but declined to address them, concluding only that "[t]hose threshold issues aside, the ultimate success of Plaintiffs' claims depends on the determination of whether the HRA structure provides 'substantially

12

equivalent' health benefits," and that "Plaintiffs have not offered sufficient probative evidence to allow the Court to make any determination regarding the merits of their claims." J.A. 827-28.

We find, however, that this Court cannot, as the district court has done, assume subject matter jurisdiction merely to reach a less thorny issue. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "'[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it.'" *Id.* at 95 (citing *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). "[I]f the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no connection concerning it. "'[When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.'" *Id.* at 95 (citing *United States v. Corrick*, 298 U.S. 435, 440 (1936)). Thus this Court must now determine whether jurisdiction is proper in the district court as well as in this Court.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1), which provides for the interlocutory appeal of district court orders granting, continuing, modifying, refusing or dissolving injunctions. This Court, however, must address SPX's threshold issues to satisfy itself as to the district court's jurisdiction.

13

Both in the district court below and in its response brief filed with this Court, SPX asserted that (1) Plaintiffs cannot assert a LMRA Section 301 claim because they have failed to allege breach of a collective bargaining agreement ("CBA"); (2) the UAW cannot assert a LMRA Section 301 claim in its representative capacity on behalf of the retirees because there is no evidence that they have consented to the union's representation; (3) the UAW cannot assert its ERISA Section 502(a)(1)(B) claim in its representative capacity on behalf of the retirees because the UAW is not a participant, beneficiary, or fiduciary under ERISA; and (4) to the extent Plaintiffs seek to recover benefits under ERISA Section 502(a)(1)(B), they cannot also assert a claim for equitable relief under ERISA Section 502(a)(3).[8]  Appellee's Br. 32-34.

Plaintiffs first acknowledged SPX'S affirmative defenses in their opening brief filed with this Court, and again in their reply brief.[9]  Plaintiffs respond that the threshold defenses raised by SPX, even if credited, have no effect on the individual plaintiffs' ability to pursue their claims under an ERISA class action and cannot defeat Plaintiffs'

---

[8] SPX also argued that Plaintiffs' proposed class does not meet the requirements of Federal Rule of Civil Procedure 23(a) for commonality and typicality.  We decline to address matters relating to the certification of Plaintiffs' purported class, as that matter has been fully briefed and is currently pending before the district court.  *See infra* note 2.

[9] SPX asserts that because Plaintiffs did not respond to its threshold defenses below, their arguments before this Court are waived.  *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th 1998) (plaintiff cannot claim on appeal that she suffered from a hostile work environment under Title VII when her complaint failed to raise such a claim); *United States v. Regan*, 627 F.3d 1348, 1354 (10th Cir. 2010) (defendant cannot argue for a lesser sentence on appeal based on considerations not presented to the district court).  We disagree.  By filing suit, Plaintiffs maintained that they had standing and stated valid legal claims.  Although the Plaintiffs failed to respond specifically to SPX's arguments, the district court was not precluded from considering them.

right to obtain relief. Reply Br. 7-10. Specifically, Plaintiffs argue that (1) whether Plaintiffs' claims can be brought under Section 301 of the LMRA is "beside the point," because Plaintiffs' ERISA and LMRA are both essentially breach of contract claims and SPX's breach of the settlement agreements violates ERISA Section 502(a)(1)(B); (2) whether the UAW is required to have consent of the retirees to bring Section 301 LMRA claims in a representative capacity is irrelevant because Plaintiffs have valid claims under ERISA regardless of LMRA Section 301, and the individual plaintiffs can bring claims for breach of the settlement agreements regardless of the UAW's capacity to do so; (3) regardless of the UAW's standing to bring claims under ERISA, the individual plaintiffs have standing as "participants" and "beneficiaries;" and (4) whether Plaintiffs have a claim for equitable relief under ERISA Section 501(a)(3) is irrelevant because Plaintiffs have claims under ERISA Section 502(a)(1)(B). Appellants' Br. 25-26.

We conclude that Plaintiffs have, at a minimum, stated a claim pursuant to ERISA Section 502(a)(1)(B). It provides that a civil action may be brought (1) by a "participant or beneficiary" . . . "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). Plaintiffs have pled that they are "participants" in an employee welfare benefit plan, and that the reduction of retiree health care benefits violates the terms of the plan. J.A. 22. As relief, Plaintiffs seek the entry of a judgment against SPX under Section 502(a)(1)(B) which clarifies the rights of Plaintiffs under the terms of the settlement agreements by declaring that the implementation of HRAs is not the substantial equivalent of the insurance plans specified in the settlement

15

agreements. J.A. 22-23. Having found that the district court has jurisdiction over Plaintiffs' claim pursuant to ERISA Section 502(a)(1)(B), this Court is satisfied that it may continue to consider the substance of Plaintiffs' appeal. We need not therefore, for purposes of this appeal, establish district court jurisdiction as to the remaining claims.

## C. Success on the Merits

Next, we consider whether the district court properly found that Plaintiffs had not established a likelihood of success on the merits of the underlying healthcare coverage dispute. The outcome of the underlying case turns on whether the creation of the HRA accounts satisfies the "substantially equivalent" provisions of each of the settlement agreements. We agree with the district court's conclusion that the evidentiary record was not sufficiently developed to make such a fact-sensitive inquiry. Plaintiffs dispute the need for additional evidence, and assert that the record established that making a sum of money available through an HRA to use for reimbursement of certain expenses is not "coverage." Thus, Plaintiffs submit that implementation of the HRA approach to providing healthcare benefits constitutes a breach of the settlement agreements' provisions.

Although the settlement agreements do not require that coverage be provided through a group health plan, Plaintiffs imply that "coverage" and "plan" have specific meanings that are inconsistent with the structure of an HRA. Appellants' Br. 17-21. The terms "coverage" and "plan," however, are not defined in the settlement agreements, and

16

Plaintiffs have cited only to nonbinding case law from other circuits to suggest that the meaning of "coverage" does not include HRA plans.[10]

Of the cases Plaintiffs cite, only *United Steelworkers of America, AFL-CIO v. Kelsey-Hayes Co.*, 750 F.3d 546 (6th Cir. 2014), involves the replacement of retirees health insurance plans with HRAs. In *Kelsey-Hayes*, the Sixth Circuit examined whether providing HRAs as a replacement for the retirees' group health plans violated the parties' collective bargaining agreement. Plaintiffs would have this Court rely solely on the court's finding that "HRAs are not company-provided group insurance," and that they did not meet the company's contractual obligation to provide specific "healthcare coverages" to its retirees. *Id.* at 554-55. The terms of the agreement in *Kelsey-Hayes*, however, differ significantly from the provisions of the settlement agreements in this case.

Under the terms of its collective bargaining agreement, Kelsey-Hayes provided healthcare benefits through group health insurance plans and promised its retirees it would continue the healthcare coverages in effect at the time of retirement. *Id.* at 549. If the benefits provided proved impractical or were no longer permitted, Kelsey-Hayes

---

[10] *See United Steelworkers of Am., AFL-CIO v. Kelsey-Hayes Co.*, 750 F.3d 546, 555 (6th Cir. 2014) (HRAs held to violate parties' collective bargaining agreement that required company to provide retirees the same type of healthcare coverage in effect at retirement); *Bontrager v. Indiana Family & Soc. Servs. Admin.*, 829 F. Supp. 2d 688 (N.D. Ind. 2011), *aff'd*, 697 F.3d 604 (7th Cir. 2012) (state's $1,000.00 annual cap on dental services covered by Medicaid is not "coverage" where costs exceeding the cap are borne by the recipient); *Aid Association for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1176 (D.C. Cir. 2003) (held that "coverage" refers to "the inclusion or exclusion of specific risks under an insurance policy.").

agreed to "provide new benefits and/or coverages as closely-related as possible and of equivalent value to those not provided." *Id.*

By contrast, SPX's obligation under the settlement agreements requires only that SPX provide coverage which is "substantially equivalent in benefits." Given the broader parameters within which SPX may make healthcare benefits available, a more in-depth factual analysis, based on a more fully-developed record, is needed to determine whether HRAs in general, based upon their structure, as well as the specific terms of the HRAs SPX established for its retirees, provide substantially equivalent healthcare benefits in accordance with terms of the settlement agreements.

While case law from our sister circuits may be deemed persuasive when deciding these issues on the merits, we agree with SPX's assertion that at a minimum, the pertinent provisions of the settlement agreements are ambiguous on the question of whether an HRA is a "plan" that provides "coverage" as contemplated by the parties. Such ambiguity is simply insufficient to support a finding that success on the merits is "likely" rather than merely "possible" and is fatal to Plaintiffs' motion for preliminary injunction. Thus we must conclude that the district court did not abuse its discretion in finding that Plaintiffs failed to demonstrate a likelihood of success on the merits.

## D. Irreparable Harm

Next, we consider whether Plaintiffs have demonstrated they are likely to suffer irreparable harm without a preliminary injunction. Plaintiffs allege that twenty-eight percent of eligible beneficiaries failed to purchase insurance with their HRA funds, and that without a preliminary injunction, they will suffer uncertainty and stress caused by a

18

lack of insurance, and may have to forego other necessities to afford medical care. Each retiree, however, had the option to avoid the loss of insurance by securing coverage through an HRA account. Plaintiffs presented no evidence that anyone who had attempted to secure insurance using an HRA account was unable to do so. Admittedly, the retirees had to expend time and effort to navigate the process, and it may have been, as Plaintiffs allege, confusing and time-consuming, but SPX offered transition assistance to retirees through OneExchange. Any injuries retirees may have suffered in terms of time, money and energy expended in the absence of an injunction were not enough to support a finding of irreparable harm. *See Sampson*, 415 U.S. at 90. Plaintiffs otherwise have failed to provide evidence that anyone has suffered any of the potential irreparable harms identified, or that any such harms were imminent. As the Supreme Court noted in *Winter*, the possibility of irreparable harm does not constitute a "clear showing" that the plaintiff is entitled to relief. 555 U.S. at 22. Given the extraordinary nature of the remedy, a preliminary injunction is not warranted where, as here, the moving parties have not shown that they availed themselves of opportunities to avoid the injuries of which they now complain. Thus we conclude that the district court did not abuse its discretion in finding that Plaintiffs failed to demonstrate they were likely to suffer irreparable harm without the injunction.

### E. Balance of Equities and Public Interest

Finally, we consider whether Plaintiffs demonstrated that the balance of equities tips in their favor or that an injunction is in the public interest. Granting the preliminary injunction would require SPX to cancel the current HRA accounts and reinstate group

19

coverage, which may only be temporary if SPX ultimately prevails on the merits. The HRA accounts have been in effect for over two years. Given the administrative challenges and confusion for the retirees who must navigate the process of securing healthcare coverage each time the approach for providing healthcare benefits changes, and that Plaintiffs have not demonstrated a likelihood of success on the merits or irreparable harm, the balance of equities and the public interest are better served by allowing the underlying litigation proceed to a decision on the merits.

III.

For the foregoing reasons, we affirm the denial of the motion for preliminary injunction and remand for further proceedings.

*AFFIRMED*