**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2339**

SWIFT BEEF COMPANY,

        Plaintiff - Appellee,

    v.

ALEX LEE, INC.,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Max O. Cogburn, Jr., District Judge.  (5:17-cv-00176-MOC-DSC)

Argued:  October 30, 2018                  Decided:  January 17, 2019

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Mark W. Kinghorn, MCGUIREWOODS, LLP, Charlotte, North Carolina, for Appellant.  Clayton E. Bailey, BAILEY BRAUER PLLC, Dallas, Texas, for Appellee.  **ON BRIEF:** Benjamin L. Stewart, BAILEY BRAUER PLLC, Dallas, Texas; Thomas G. Hooper, NELSON MULLINS RILEY & SCARBOROUGH LLP, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, we review the district court's award of a preliminary injunction to a commercial tenant in a lawsuit brought by the tenant against its landlord. The court temporarily enjoined the landlord from terminating its lease with the tenant and from initiating eviction proceedings in the state court during the pendency of the action in the district court. After reviewing the record, we hold that the court abused its discretion in granting this relief, because the court failed to consider the full scope of the landlord's rights of termination under the lease. Accordingly, we vacate the district court's judgment and remand for further proceedings.

I.

Swift Beef Co. (Swift Beef), the tenant in this case, is a meat company that produces "case ready" meat, which is packaged and sold in grocery stores. Alex Lee, Inc. (Alex Lee), the landlord, operates a food distribution company and owns a meat processing facility in Lenoir, North Carolina. Alex Lee agreed to lease this facility to Swift Beef and, in a separate agreement, Swift Beef agreed to supply Alex Lee with certain meat products. The parties accordingly executed a lease agreement (the lease) and a separate purchase agreement (the purchase agreement) detailing the parties' rights and obligations.

The lease sets forth two different procedures for termination of the lease obligations. Section 18.2 of the lease states:

In the event of [Swift Beef's] *Default,* [Alex Lee], at its option, may, unless the [default] *is cured within [30] days after written notice* of [default] is delivered to [Swift Beef], immediately terminate this Lease and all of the rights of occupancy . . . and then [Alex Lee] shall have the right to enter the Property and remove all persons and property from the Property. (Emphasis added).

Thus, to terminate the lease under Section 18.2, Alex Lee was required to provide to Swift Beef written notice and a 30-day period to cure any default.[1]

A second termination procedure in the lease, contained in Section 18.3, does not require written notice of default or an opportunity to cure:

*Notwithstanding anything to the contrary* contained herein, if [Swift Beef] fails, refuses, or is unable to produce Products for [Alex Lee] in accordance with *Section 3 of the Purchase Agreement*, [Alex Lee] may, in its sole discretion, *immediately terminate* this Lease and all of the rights of occupancy of [Swift Beef] under this Lease effective immediately upon the delivery of written notice (or effective at such time as otherwise set forth in the written notice) to [Swift Beef]. (Emphasis added).

Under the plain language of Section 18.3, Alex Lee could "immediately terminate" the lease if Swift Beef failed to comply with Section 3 of the purchase agreement. That section of the purchase agreement set forth the pricing structure for the meat products supplied to Alex Lee, requiring Swift Beef to "use commercially reasonable efforts to produce the Product efficiently and at competitive cost."

Over the course of the parties' relationship, several disputes arose. Alex Lee contended that Swift Beef failed to fulfill an adequate percentage of Alex Lee's orders, produced substandard products, and overcharged Alex Lee for those products. On its

---

[1] As defined by the lease, a default included any breach of obligations in the lease or the purchase agreement.

3

part, Swift Beef asserted, among other things, that Alex Lee continually decreased its orders of meat products, that Alex Lee failed to pay for certain products, and that Alex Lee withheld its consent for Swift Beef to install improvements at the facility.

Alex Lee's president ultimately informed Swift Beef's representative that "it will be best" for both parties to terminate the lease. After some discussions about a possible sale of the facility to Swift Beef, Alex Lee's counsel sent a letter to Swift Beef's counsel, accusing Swift Beef of failing to comply with Section 3 of the purchase agreement and citing Section 18.3 as authorizing an immediate termination of the lease.

Swift Beef later filed suit against Alex Lee in the district court, alleging claims for breach of contract and for anticipatory breach of contract. Swift Beef asked the court to order both declaratory and injunctive relief. Relevant to this appeal, Swift Beef's claim of anticipatory breach was based on the assertion that Alex Lee's threat to terminate the lease violated Section 18.2, because Alex Lee had not provided Swift Beef notice of default and an opportunity to cure.

Swift Beef later filed a motion for a preliminary injunction, seeking to prevent Alex Lee from terminating the lease and from initiating eviction proceedings in the state court.[2] After conducting a hearing and reviewing the evidence, the district court granted Swift Beef's motion. In its decision, the court addressed whether Swift Beef had satisfied the four factors for injunctive relief set forth in *Winter v. Natural Resources Defense*

---

[2] Swift Beef originally filed a motion for a temporary restraining order, which later was converted to a motion for a preliminary injunction.

4

*Council, Inc.*, 555 U.S. 7, 20 (2008).[3] Those factors require a plaintiff seeking a preliminary injunction to show that the plaintiff is likely to succeed on the merits of its claim, that the plaintiff will suffer irreparable harm without injunctive relief, that the balance of equities favors the plaintiff, and that injunctive relief is in the public interest. *Id.*

In its decision, the district court first observed that Alex Lee presented evidence that "cast[] serious doubt on whether" Swift Beef fully had upheld its obligations under the parties' agreements, including whether Swift Beef used "commercially reasonable efforts" to produce products efficiently and at competitive prices. However, the court determined that this evidence of Swift Beef's potential breaches was "not relevant" to the question whether Swift Beef could succeed on its claim that Alex Lee committed an anticipatory breach of contract. The court concluded that under Section 18.2, Alex Lee was required, but failed, to provide notice of default and a 30-day opportunity to cure before acting to terminate the lease. Accordingly, the court held that Swift Beef was likely to succeed on its claim of anticipatory breach. Notably, however, the court did not refer to Section 18.3 in its decision.

The district court also concluded that the remaining *Winter* factors favored Swift Beef. Thus, the court awarded Swift Beef a preliminary injunction prohibiting Alex Lee during the pendency of the lawsuit from acting in any manner to evict Swift Beef from the meat processing facility. Alex Lee timely filed this appeal.

---

[3] The district court issued an initial opinion, and then revised its decision. We discuss only the amended decision here.

II.

We have jurisdiction under 28 U.S.C. § 1292(a)(1) to consider this interlocutory appeal from an award of a preliminary injunction. In reviewing the district court's injunction, we employ an abuse-of-discretion standard, examining the court's legal conclusions de novo and the court's factual findings for clear error. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).

Alex Lee argues that the district court incorrectly concluded that Swift Beef was likely to succeed on the merits of its anticipatory breach claim, because the court failed to consider the provisions of Section 18.3. In response, Swift Beef maintains that the district court correctly held that Section 18.2 was the dispositive lease provision, which requires Alex Lee to provide notice of default and an opportunity to cure. Swift Beef further asserts that the district court implicitly concluded that Section 18.3 was inapplicable, based on the court's view of the factual record. We find no merit in Swift Beef's position.

A preliminary injunction is an extraordinary remedy typically awarded to protect the status quo and to prevent irreparable harm while a suit is pending. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). As described above, a party seeking a preliminary injunction must show: (1) a likelihood of success on the merits of the claims presented; (2) that irreparable harm is likely absent injunctive relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. We focus our present analysis on the first *Winter* factor, namely, whether

6

Swift Beef made a "clear showing" that it was likely to succeed on its claim that Alex Lee anticipatorily breached the lease by seeking to terminate it without notice. *See Di Biase*, 872 F.3d at 230 (citing *Winter*, 555 U.S. at 22).

Under North Carolina law, which governs interpretation of the lease, a "[b]reach of contract occurs when a party fails to perform a contractual duty" that has become absolute.[4] *Millis Constr. Co. v. Fairfield Sapphire Valley, Inc.*, 358 S.E.2d 566, 569 (N.C. Ct. App. 1987). An anticipatory breach occurs when a breach is "committed before there is a present duty of performance," and occurs when a party's conduct evinces an "intention to refuse performance in the future." *Cook v. Lawson*, 164 S.E.2d 29, 32 (N.C. Ct. App. 1968) (citation omitted).

The district court's conclusion that Swift Beef likely would succeed on its claim of anticipatory breach rested entirely on the court's finding that Alex Lee failed to comply with the provisions of Section 18.2 requiring notice of default and an opportunity to cure. Notably, however, the court did not consider whether Section 18.3 was applicable, as evidenced by the court's failure to reference that provision in its decision.

As previously discussed, Section 18.3 permits immediate termination of the lease if Swift Beef "fails, refuses, or is unable to produce" meat products in accordance with Section 3 of the purchase agreement. That section of the purchase agreement requires

---

[4] Because this case arose under the court's diversity jurisdiction, we apply the law of the state where the lease was executed, namely, North Carolina. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *see Fast v. Gulley*, 155 S.E.2d 507, 509-10 (N.C. 1967).

that Swift Beef "use commercially reasonable efforts to produce the Product efficiently and at competitive cost."

Although the district court did not cite Section 3 of the purchase agreement, the court referenced nearly identical language from that provision, finding that Alex Lee presented evidence "cast[ing] serious doubt" on whether Swift Beef used "commercially reasonable efforts to produce Case Ready goods efficiently and at competitive prices." The court concluded nevertheless that any non-compliance by Swift Beef with the purchase agreement was not relevant to the issue whether Alex Lee validly terminated the lease under Section 18.2, because Alex Lee had failed to give the required notice and opportunity to cure.

We disagree with the district court's analysis. The disputed factual issue of Swift Beef's performance under the purchase agreement was directly relevant to the question whether Alex Lee could rely on Section 18.3 in terminating the lease without notice, and whether Swift Beef could succeed on the merits of its anticipatory breach claim. Thus, both the disputed facts at issue and the differing termination provisions of the lease necessitated consideration of Section 18.3 before any injunctive relief could be awarded in the case.

Accordingly, we hold that the district court abused its discretion in awarding preliminary injunctive relief without considering the applicability of Section 18.3. In the absence of such review, Swift Beef failed to make a clear showing of likely success on the merits of its anticipatory breach claim. And, based on our holding that Swift Beef failed to satisfy the first *Winter* factor, we need not address the remaining *Winter* factors.

8

*See Pashby*, 709 F.3d at 320 (explaining that a plaintiff seeking a preliminary injunction must satisfy each *Winter* factor).

### III.

For these reasons, we vacate the district court's preliminary injunction prohibiting Alex Lee from terminating the lease and from initiating eviction proceedings. We remand the case to the district court for further proceedings.

*VACATED AND REMANDED*