**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2185**

---

WILLIAMS OHIO VALLEY MIDSTREAM, LLC, a foreign company,

        Plaintiff – Appellee,

   v.

PHILLIP A. KITTLE, West Virginia resident; DEBORAH K. KITTLE, West Virginia resident,

        Defendants – Appellants.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:23-cv-00310-JPB)

---

Argued:  May 8, 2024                  Decided:  July 8, 2024

---

Before WYNN and BENJAMIN, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Reversed by unpublished opinion.  Judge Benjamin wrote the opinion, in which Judge Wynn and Senior Judge Keenan joined.

---

**ARGUED**:  Joy Melina Diaz Llaguno, HOOK & HOOK PLLC, Waynesburg, Pennsylvania, for Appellants.  Mychal Sommer Schulz, BABST, CALLAND, CLEMENTS, ZOMNIR, P.C., Charleston, West Virginia, for Appellee.  **ON BRIEF**: Matthew R. Miller, HOOK & HOOK, PLLC, Waynesburg, Pennsylvania, for Appellants. Robert M. Stonestreet, BABST CALLAND, P.C., Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

Williams Ohio Valley Midstream, LLC ("WOVM") commenced this action against Phillip and Deborah Kittle ("Kittles"), challenging the Kittles' denial of access to the Kittles' property. Without access, WOVM could not perform mitigation and maintenance work on its natural gas pipelines situated along easements across the property. WOVM alleged a mining operation set to take place beneath the Kittles' property threatened to damage its pipelines. An agreement governed the scope of the parties' property rights and authorized certain pipeline-related activities. WOVM sued the Kittles for breach of contract and sought a preliminary injunction to enjoin the Kittles' obstructive conduct. The district court adopted WOVM's verified statement of facts to grant a preliminary injunction, finding it satisfied all four factors in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). The Kittles appealed the decision. Finding no evidence in the record to satisfy irreparable harm, we hold the district court abused its discretion in granting a preliminary injunction. We reverse the grant of preliminary injunction.[1]

I.

A.

The Kittles reside on property they own in Marshall County, West Virginia. WOVM operates as a midstream company in the oil and gas industry where it owns and

---

[1] Consistent with the amended verified complaint, we refer to the "right of way" as a singular right of way. J.A. 194 ¶ 19.

operates pipelines and facilities that "transport, process, and store natural gas produced by others." J.A. 192. It owns a system of pipelines under the Kittles' property. In 2010, the Kittles entered a Pipeline Right of Way Agreement (Agreement) with the predecessor-in-interest to WOVM, Caiman Eastern Midstream, LLC. The granting language conveys:

> [t]wo (2) permanent rights of way and easements to locate, lay, operate, maintain, repair, replace, and remove pipelines, with the right to make connections thereto, change the size of, re-lay such pipelines, and/or lay additional pipelines at any time . . . for the transportation of . . . natural gas . . . wherever produced on, over, through, under, and across the lands of [the Kittles], with the right of ingress and egress to and from such pipelines.

J.A. 133.

The "Facilities" section grants "TWO (2) Thirty foot wide (30') Pipeline Easements for the construction of four (4) pipelines." *Id.* The first easement is for the "installation of one twelve-inch (12") pipeline and one four-inch (4") pipeline," to be "constructed in the same ditch and within the same thirty-foot wide permanent easement." *Id.* The second easement is for the "future installation of two (2) additional pipelines . . . to be constructed in the same ditch and within the same thirty-foot wide permanent easement," granted "specifically for the purpose of connecting future well or wells that may be drilled on [the Kittles'] property (well connect lines)." *Id.*

The Agreement describes the "right of way" as:

> two (2) permanent easements, each being thirty (30) feet in width and centered on the pipelines as installed . . . During temporary periods, [WOVM] shall have the right to use up to twenty (20) additional feet along and adjacent to said right of way in connection with construction, maintenance, repair, removal, replacement, and/or any other right granted [under the Agreement].

3

*Id*. Last, the Kittles have "full . . . use and enjoy[ment]" of the property, "except as may conflict with the rights granted" to WOVM under the Agreement.  J.A. 134.

B.

The following facts are alleged in WOVM's amended verified complaint.  It received notice a longwall coal mining operation would take place beneath the Kittles' property starting on October 23, 2023.  The operation removes coal deposits and causes the roof of the mine to collapse.  The collapse causes soil movement near the mine surface as materials fall into the void created from the coal removal.  The mining threatened to cause a leak, rupture, or other physical damage to WOVM's pipelines beneath the Kittles' property.  As such, WOVM required access to the right of way and easements to begin mitigation and maintenance work to stabilize the pipelines before the mining operation arrived.

In September 2023, WOVM entered the Kittles' property to begin its maintenance work.  It excavated the pipelines located on the first easement and stored the extra soil on the first and second easements.  But before the work was done, the Kittles positioned a tractor trailer that blocked entry and exit to the easements.  The obstruction frustrated WOVM's pipeline-related mitigation and maintenance efforts and progress on the project stalled.

WOVM sued the Kittles and moved for a temporary restraining order.  WOVM brought a claim for breach of contract against the Kittles.  It alleged the Kittles breached the parties' agreement that granted WOVM access to a right of way and easements across the property to perform pipeline-related maintenance work.  The breach cost WOVM

4

thousands of dollars in delay costs.  WOVM also brought claims for temporary and permanent injunctive relief.  It sought to enjoin the Kittles from obstructing its access, and alleged unless it "immediately gain[ed] access to the right of way," it could not complete the necessary pipeline-related mitigation and maintenance work before the longwall coal mining operations arrived.  J.A. 202 ¶ 58.

C.

The district court held a hearing on WOVM's motion on October 17, 2023.  Counsel for WOVM told the court the circumstances underlying its original request for injunctive relief had changed.  WOVM had implemented a creative workaround in response to the longwall coal mining operation that "alleviated" the "urgent need" to remove the tractor trailer.  J.A. 177–78.  It spent nearly $200,000 to excavate pipelines located on the first easement and stored the extra soil on the first easement.

Despite this undertaking, WOVM still required access to the right of way for "slightly less urgent" reasons.  J.A. 178.  It had also temporarily placed loose soil excavated from the pipelines on the first easement onto the second easement. WOVM needed to secure the loose soil to prevent it from drifting off the property, and to check environmental controls it set up along the right of way.  Failure to do so could result in a notice of permit violation from the West Virginia Department of Environmental Protection.  Counsel for WOVM also told the court, "[a] [Department of Environmental Protection] inspector could show up this afternoon, tomorrow morning, maybe never."  J.A. 186.

The parties debated the language of the Agreement.  WOVM argued the Agreement granted one single right of way divided into two easements such that the Agreement

5

authorized its pipeline-mitigation and maintenance work. The Kittles argued the Agreement granted two separate rights of way tied to two separate easements, each limited to a specific use. They argued WOVM's work on the second easement was unauthorized by the Agreement.

The district court held the Agreement unambiguously created one singular right of way comprised of two different easements that included the right to maintain and repair the pipelines, and that this work was necessary due to the coming longwall coal mining operation. The court told WOVM to file an amended complaint to reflect the changed nature of its request for injunctive relief along with a proposed order granting preliminary injunction. WOVM complied with the court's instructions. The district court adopted WOVM's proposed order to grant the motion for preliminary injunction.

The Kittles appealed the decision. We have jurisdiction over an appeal from the district court's grant of a preliminary injunction under 28 U.S.C. § 1292(a)(1).

II.

"We review a district court's [grant] of a preliminary injunction for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021). A court abuses its discretion when it "rest[s] its decision on a clearly erroneous finding of a material fact, or misapprehend[s] the law with respect to underlying issues in litigation." *Id*. (internal quotation marks omitted).

6

"A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the [moving party] is entitled to such relief." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (cleaned up). A party seeking a preliminary injunction must establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Each preliminary injunction factor must be "satisfied as articulated." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

## III.

### A.

The Kittles believe the district court erroneously granted a preliminary injunction because WOVM failed to establish the four factors required under *Winter v. Natural Resources Defense Council, Inc.* After a review of the record, we agree that WOVM has not satisfied all required *Winter* factors. Missing from the record is evidence that WOVM would sustain irreparable injury absent the issuance of a preliminary injunction. The district court therefore abused its discretion when it granted a preliminary injunction.

A plaintiff seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Roe v. Dep't of Def.*, 947 F.3d 207, 229 (4th Cir. 2020) (quoting *Winter*, 555 U.S. at 22). A plaintiff must make a "clear showing" it will suffer harm that is "'neither remote nor speculative, but actual and imminent.'"

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (internal citation omitted). In addition, harm that is irreparable "cannot fully be rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (internal citation omitted). "Mere injuries, however insubstantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough." *Roe*, 947 F.3d at 228 (internal citations omitted). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

## B.

We begin our review of the district court's grant of a preliminary injunction by looking to the second *Winter* factor: irreparable harm. WOVM must make a clear showing that it will suffer irreparable harm in the absence of preliminary relief. Our analysis begins and ends here as the record does not contain evidence to satisfy irreparable harm.

The district court held WOVM satisfied irreparable harm, basing this conclusion on several factual findings. First, WOVM was likely to sustain irreparable harm in the form of "continued incurred costs without progress on the pipeline-related mitigation and maintenance work before the longwall coal mining operation reached the Kittles' property." J.A. 228 ¶ 7. Second, WOVM would sustain irreparable harm because it would not be able to mitigate potential damage to its pipelines from soil movement caused by the mining operation. J.A. 228 ¶ 7. Last, WOVM would sustain irreparable harm if it could

8

not seal and secure excavated soil stored on the first easement to prevent it from migrating off the property, and if it could not maintain its environmental controls to comply with permits issued by the West Virginia Department of Environmental Protection. *Id.* The court explained that WOVM's failure to satisfy either requirement "may subject [it] to notices of [permit] violation from the [West Virginia Department of Environmental Protection]." *Id.*

The court adopted the facts stated in WOVM's proposed order granting a preliminary injunction. The record, however, lacks an evidentiary basis to support a clear showing of irreparable harm. The district court's determination of irreparable harm is erroneous in two ways.

First, the court disregarded circumstances that alleviated WOVM's immediate need to access the right of way. WOVM told the court the urgency of its original request—to perform pipeline-related mitigation and maintenance work before the longwall coal mining operation arrived—had been alleviated. WOVM paid to excavate pipelines located on the first easement and temporarily stored the loose soil on the first and second easements. Contrary to the district court's finding, WOVM's immediate need to access the right of way in response to the mining operation had been resolved by this workaround. The remaining injury consisted of WOVM's continued incurred costs from delays. But injury that may be remedied through monetary damages is insufficient to satisfy irreparable harm under *Winter*. *Di Biase*, 872 F.3d at 230 (quoting *Sampson*, 415 U.S. at 90).

Second, the court erroneously found WOVM's assertions related to possible permit violations established irreparable injury. WOVM required access to the second easement

9

for "slightly less urgent" reasons—to secure loose soil to stop it from drifting away, and to check its environmental controls. J.A. 178. It would sustain irreparable harm if the West Virginia Department of Environmental Protection issued a notice of permit violation for not complying with these terms. At the motion hearing, counsel for WOVM essentially conceded this injury was conjectural, stating that "[a] [Department of Environmental Protection] inspector could show up this afternoon, tomorrow morning, maybe never." J.A. 186. WOVM presented no evidence of a permit violation. Thus, its assertions of injury are not actual and imminent and are too speculative to give rise to irreparable injury. *See Direx Israel, Ltd.*, 952 F.2d at 812.

The court adopted WOVM's assertions of irreparable harm that are speculative and unsupported by evidence. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Di Biase*, 872 F.3d at 230 (quoting *Winter*, 555 U.S. at 22). Because evidence of irreparable harm is absent from the record, we need not analyze any of the remaining *Winter* factors to conclude that the district court abused its discretion in granting a preliminary injunction.[2]

---

[2] On appeal, the parties debate whether the Agreement grants one single right of way, or two separate rights of ways tied to two separate easements. To this point, we note the Agreement implements inconsistent language. It both references a single "right of way" and "[t]wo (2) permanent rights of ways and easements." J.A. 133–34. WOVM concedes as much. Oral Arg. 19:11–19. However, we decline to interpret the Agreement, or decide whether the inconsistent language creates a legal ambiguity. That issue goes to whether WOVM is likely to succeed on the merits of its breach of contract claim under the
(Continued)

IV.

Evidence of irreparable harm is absent from the record. Therefore, the district court

abused its discretion when it granted a preliminary injunction, and the order is

*REVERSED.*

---

first *Winter* factor. We need not reach this factor because we hold the record lacks evidence to satisfy the second *Winter* factor: that WOVM sustained irreparable harm. This absence compels our conclusion that the district court abused its discretion when it granted a preliminary injunction.